[File No. 6697.]

STATE OF NORTH DAKOTA ON THE RELATION OF ALVIN C. STRUTZ, Attorney General, Appellant, v. SHERIDAN COUNTY, a Public Corporation, and J. P. Michalenko, John P. Dahl, and Thos. Brakel, as County Commissioners, and Ben F. Kludt, as County Auditor of Sheridan County, Respondents.

(295 N. W. 487.)

Opinion filed December 24, 1940.

*Alvin C. Strutz,* Attorney General, and *P. O. Sathre,* Assistant Attorney General, for appellant.

*Peter A. Winter,* State's Attorney of Sheridan county, for respondents.

NUESSLE, Ch. J. This proceeding in mandamus was brought by the attorney general as relator to compel the county commissioners of Sheridan county to levy a tax sufficient to cover the charge to the state for the institutional care of the county's patients in the Hospital for the Insane, the Institution for the Feeble Minded, and the State Tuberculosis Sanatorium. See § 2572, 1925 Supplement to the 1913 Compiled Laws. Upon cause shown, the court denied the application and judgment was entered accordingly. The relator thereupon perfected the instant appeal.

There is no controversy as to the facts, which were stipulated. Pursuant to the stipulation it appears that Sheridan county is indebted to the state of North Dakota for the care of its patients in the Hospital for the Insane, the Institution for the Feeble Minded, and the State Tuberculosis Sanatorium in a considerable sum. When the county tax levy was made the item for this charge was not included and no levy was made to cover the same, for the alleged reason that the levy to cover the necessary operating expenses of the county exhausted any levy that could be made for general county purposes. When this omission came to the attention of the board having the several institutions

above named in charge, the matter was placed in the hands of the attorney general, who instituted the instant proceeding.

The court on the attorney general's application issued an order directed to the respondents to show cause why they should not be required to reconvene and, among other things, make a levy to cover the amount of the state's charge. In their return the respondents showed that pursuant to the statute, chapter 235, Session Laws 1929, the board of county commissioners had duly convened for the purpose of making the tax levy for Sheridan county, and at that time ascertained that the needs of the county for general county purposes, other than for the institutional charges here involved, required a levy of 8 mills on the dollar on 50 per cent of the full and true value of the taxable property in the county, the basis fixed by the Initiated Measure, approved June 29, 1932 (see Session Laws 1933, p. 493). So in the judgment of the commissioners, under the limit imposed by the statute, the charges for institutional care could not be, and they were not taken into consideration in making the levy.

The relator's contention with respect to the matter here in difference, is that the charges for institutional care are not general county charges, and so are not subject to the 8 mill limit fixed by chapter 235, Session Laws 1929. Accordingly, the relator contends that a tax must be levied sufficient to cover the full amount of the state's charge regardless of the 8 mill limit. On the other hand, the respondents contend that the institutional charges are general county charges and so are subject to the 8 mill limitation; that the charges for salaries and for the other items required to enable the county to function and carry on its affairs as such, have priority; that because of the 8 mill limitation it was impossible to make a levy which would cover both these necessary county expenses and the institutional charges.

Both sides to this controversy concede that the several counties are chargeable for the institutional care of their respective patients. The relator contends, however, that though the counties are required to pay, nevertheless the charges are not to be considered county charges. It seems to us this contention cannot be sustained. The charges for the care of a county's insane may be made chargeable to a county, and the legislature has expressly so provided. This court, in the case of State ex rel. McCue v. Lewis, 18 N. D. 125, 119 N. W. 1037, had occasion

to consider the statute providing for payment for patients in the hospital for the insane (see § 2568, Comp. Laws 1913), and in that case it was held such charges were proper county charges. We can see no reason to distinguish in principle between charges for the care of the insane and charges for the care of the feeble-minded or for those suffering from tuberculosis. And the legislature has not seen fit to make any such distinction. See § 1716a1, 1925 Supplement, and § 2588, 1925 Supplement, as amended by chapter 251, Session Laws 1929, as amended by chapter 246, Session Laws 1939.

Section 2572, 1925 Supplement to the 1913 Comp. Laws, provides: "The board of county commissioners shall, at the time of levying the county taxes as provided in section 2148 of the Compiled Laws of 1913, *include in the itemized statement of county expenses upon which the county taxes are to be based* as provided in said section, an estimate of the total amount which will be chargeable to the county during the ensuing year for the care, board, and treatment of such county's patients at the state hospital for the insane, the institution for the feeble-minded and the state tuberculosis sanatorium. If any county fails to levy such taxes as herein provided, sufficient to pay the amount estimated to become chargeable to such county during the ensuing year, at the time of levying other county taxes, it shall be the duty of the attorney general of the state to bring action in the name of the state against such county, to enforce the making of the estimates and the levying of taxes as provided herein."

Section 4a, of chapter 235, Session Laws 1929, supra, imposes a limitation of 8 mills for general county purposes, in the following words to-wit: "The aggregate amount levied by any county for general county purposes shall not exceed such amount as will be produced by a levy of eight (8) mills on the dollar of its net taxable assessed valuation. (b) The aggregate amount levied for road purposes in any county, plus the amount levied for bridge purposes shall not exceed such amount as will be produced by a levy of two and one-half (.2½) mills on the dollar of the net taxable assessed valuation of the county. (c) The foregoing limitation as to rate of levy for general county purposes shall not apply to levies for the purpose of paying interest upon the bonded indebtedness of the county, or to levies made to pay and discharge the principal thereof, nor to the county tuition levy provided

for by § 1224 of the Supplement to the Compiled Laws of 1913, nor to taxes levied pursuant to the provisions of § 2868a1, for the purpose of combating the grasshopper pest; nor to taxes levied pursuant to the provisions of §§ 2261 and 2262 of the Supplement to the Compiled Laws of 1913 for the purpose of combating gophers and similar pests. *With the exception noted in this section* the limitation of eight (8) mills for general county purposes shall apply to all taxes which a county is authorized to levy."

The Initiated Measure, approved June 29, 1932, heretofore referred to, fixes the tax basis at 50 per cent of the "full and true" value of the taxable property in the county. Prior to the adoption of this measure the tax basis was fixed at 75 per cent of the value of such property. See § 2122a, 1925 Supplement. It appears from the showing as made that on the basis of the 75 per cent valuation the 8 mill levy would have been sufficient to meet all the charges for general county purposes including the institutional charges.

The words of § 2572, supra, and of subsection a, of § 4, chapter 235, supra, speak for themselves. Section 2572 provides, in the words of the statute italicized above, that the board of county commissioners at the time of levying the county taxes shall include in the itemized statement of county expenses upon which those taxes are to be based, an estimate of the amount which will be chargeable to the county during the ensuing year for the care, etc., of the county patients in the state hospital for the insane, the institution for the feeble-minded, and the state tuberculosis sanatorium. It is to be noted that the amount of this item shall be chargeable to the county and is to be included in the statement of county expenses. And subsection a, of § 4, chapter 235, supra, goes still further in indicating that these institutional charges shall be considered as charges for general county purposes because after fixing the levy at 8 mills on the dollar of its net taxable assessed valuation for general county purposes the statute provides that this limitation shall not apply to certain excepted levies. After making that exception (and it is to be noted that the levy for institutional charges is not included in it) the statute, in the words italicized above, recites "with the exception noted in this section the limitation of 8 mills for general county purposes shall apply to all taxes which a county is authorized to levy." The legislature could not have indicated

more clearly that there were to be no exceptions to the 8 mill limit other than those expressly set out in the statute. We are therefore forced to the conclusion that the relator's contention that the 8 mill limit has no application to levies for institutional charges is not sustainable, and that, on the other hand, as the respondents contend, levies for those charges must be held to be within the limit imposed by the statute.

It has been suggested that the charges for institutional care, if they are to be considered as county charges, are just as important as and rank with the other county expenses and must be taken care of in the same way, and if it is impossible to provide for all of such charges within the 8 mill limit, the several items must be scaled down proportionately. (See State ex rel. Lenhart v. Hanna, 28 N. D. 583, 149 N. W. 573.) But it is not necessary for us here to pass upon that proposition. The relator has not expressed a willingness to be content with half a loaf. He prays for a writ to compel a levy to cover the whole of the institutional charges. This cannot be made, and the levy kept within 8 mills, taking into account the items necessary to enable the county to continue and function as a county.

The district court was right in denying the relief sought, and its judgment must be and it is affirmed.

BURKE, MORRIS, CHRISTIANSON, and BURR, JJ., concur.